

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
04/27/2021

| | | |
|---|---|---|
| IN RE: | § | |
| **CORNERSTONE VALVE LLC,** *et al* | § | CASE NO: 19-30869 |
| | § | |
| **WELL HEAD COMPONENT INC,** | § | CASE NO: 19-30870 |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

Six months prior to its bankruptcy filing, Cornerstone repudiated a contract with Valve Venture. Valve Venture claims it is entitled to damages stemming from that repudiation. Despite knowledge of the bankruptcy filing, Valve Venture did not file its Proof of Claim until four months after the general Proof of Claim bar date, but prior to the bar date for claims for rejection damages. Valve Venture filed a Motion to Compel, seeking payment pursuant to its Proof of Claim. It argues that Valve Venture's Proof of Claim was a timely filed claim for rejection damages or, in the alternative, the late filing was a result of excusable neglect. For the reasons that follow, the Valve Venture claim was not timely filed because it does not assert damages from rejection of an executory contract and the late filing was not the result of excusable neglect.

## BACKGROUND

Cornerstone Valve, LLC and Well Head Component, Inc. ("Cornerstone") filed petitions under chapter 11 of the Bankruptcy Code on February 15, 2019. (ECF No. 1). On August 21, 2019, Cornerstone filed its "Second Amended Combined Plan and Disclosure Statement. (ECF No. 128). The Court confirmed the Cornerstone plan and disclosure statement on November 7, 2019. (ECF No. 145). Cornerstone's bankruptcy case was closed on January 8, 2020. (ECF No. 161).

Pursuant to the confirmed plan, "all Proofs of Claim filed after the applicable claims bar date (regular — July 8, 2019 and government — August 23, 2019) shall be deemed disallowed in full and expunged as of the Effective Date, forever barred, estopped, and enjoined from assertion." (ECF No. 128 at 44-45). However, the plan also provided that claims for damages arising from the rejection of executory contracts and leases could be filed up to thirty days after the effective date of the plan. Valve Venture, LLC ("Valve Venture") filed its Proof of Claim (Claim No. 43) on November 26, 2019, approximately four and a half months after the general bar date, but prior to the rejection bar date. (*See* Claim No. 43-1 at 1).

Valve Venture asserts an $81,492.87 unsecured claim against Cornerstone. (Claim No. 43-1 at 2). The claim is based on unpaid invoices from a pre-petition contract. On June 12, 2020, Valve Venture filed the present "Motion to Compel," seeking payment of a portion of its Proof of Claim. (ECF No. 164). Valve Venture asserts that its contract with Cornerstone was executory and rejected in Cornerstone's bankruptcy case. Because the Cornerstone plan paid a 20% percent dividend to unsecured creditors, Valve Venture argues that rejection of the contract entitles it to payment of 20% of its Proof of Claim. (ECF No. 164 at 2).

Cornerstone designs and manufactures high integrity valves. (ECF No. 169 at 1). To help produce its valves, Cornerstone has global suppliers who manufacture component parts. (ECF No. 169 at 1). Valve Venture, located in Italy, was one such contractor. (ECF No. 169 at 2).

The contract between Cornerstone and Valve Venture required Valve Venture "to perform visual and dimensional inspection of work in progress to ensure compliance to Cornerstone's designs." (ECF No. 169 at 2). According to Cornerstone, in early 2018, it received one or more shipments of defective parts from Valve Venture. (ECF No. 169 at 2). Cornerstone alleges that "[t]he packaging [Valve Venture] sent the items in was very poor and resulted in the finished parts

being damaged in transit from Italy to Houston." (ECF No. 169 at 2). Cornerstone claims that some of the parts were unusable and that Cornerstone lost a major client as a result of the defects. (ECF No. 169 at 3). The client canceled its order with Cornerstone, which caused Cornerstone to cancel its remaining orders with Valve Venture. (ECF No. 169 at 3).

The present dispute does not require the Court to determine whether Valve Venture was at fault for the damaged parts or whether Cornerstone breached the contract by canceling the remaining orders. However, the timing of the contract issues and the parties' course of performance is relevant to the question of whether the contract was executory when Cornerstone filed for bankruptcy. The contract dispute occurred approximately six months before Cornerstone filed its chapter 11 petitions.

On August 29, 2018, Cornerstone communicated to Valve Venture that in light of the damaged parts "we will consider the 5 open sale orders as cancelled as you do not agree to change the payment terms." (ECF No. 176 at 2). In an email from the previous day, Valve Venture acknowledged that it had performed its obligations under the contract, stating "we believe that this was not because of our fault and for this reason we believe that [Cornerstone] have to perform their part of the contracts as [Valve Venture] . . . *have fully performed theirs*." (ECF No. 176 at 3 (emphasis added)).

Valve Venture objected to Cornerstone's cancelation, stating on September 3, 2018, that Cornerstone must pay because Valve Venture "already accomplished the terms of the contract." (ECF No. 176 at 9).

While Valve Venture did not retain its present counsel until August 2019, it appears to have sought counsel well before then. On May 10, 2019, Cornerstone's counsel received an inquiry from attorney Tony Coveny asking whether Valve Venture had filed a Proof of Claim.

(ECF No. 176 at 7).  Mr. Coveny asked if Cornerstone's counsel could "confirm that both Covis and Valve Venture are adequately presented or that they still need to effectuate a proof of claim?" (ECF No. 176 at 7).  Further, Mr. Coveny stated "I am going to advise [Covis and Valve Venture] this week if they need to take further action in the bankruptcy court or retain a bankruptcy attorney familiar with this case."  (ECF No. 176 at 7).

Valve Venture also claims to have proposed that Cornerstone assume the contract on August 13, 2019.  (ECF No. 168 at 2).  Valve Venture acknowledges that Cornerstone rejected its proposal on August 21, 2019.  (ECF No. 168 at 2).  Even so, Valve Venture did not file its Proof of Claim until November 26, 2019.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  The allowance of claims is a core matter pursuant to 28 U.S.C. § 157(b)(2)(B).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

a. *The Valve Venture Contract was not Executory*

The Bankruptcy Code allows debtors in possession to assume, reject, or assign executory contracts and unexpired leases.  11 U.S.C. § 365(a).  Executory contracts are contracts where both parties have material obligations that remain to be performed.  *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1657 (2019).  Rejection of an executory contract constitutes a breach of that contract by the debtor.  *Id.*

"Section 365(a) enables the debtor (or its trustee), upon entering bankruptcy, to decide whether the contract is a good deal for the estate going forward.  If so, the debtor will want to assume the contract, fulfilling its obligations while benefitting from the counterparty's

performance. But if not, the debtor will want to reject the contract, repudiating any further performance of its duties." *Id.* at 1658.

The Seventh Circuit has held that "in the face of clear evidence of an intent to repudiate, the non-repudiating party is no longer under an obligation to perform. Because one party is not obligated to perform, the contract is no longer executory as defined in bankruptcy." *In re C&S Grain Co.*, 47 F.3d 233, 237 (7th Cir. 1995). *But see In re Kemeta, LLC*, 470 B.R. 304, 322 (Bankr. D. Del. 2012). While some courts have disagreed with the holding in *C&S Grain*, those courts typically have done so out of a concern that pre-petition repudiations should not limit a *debtor's* ability to assume executory contracts. *See In re Kemata*, 470 B.R. at 325. This case presents the opposite scenario. The debtor made clear, long before bankruptcy, that it no longer intended to perform and that it did not seek reciprocal performance.

Valve Venture argues that if Cornerstone's repudiation of the contract caused it to become non-executory, "all Debtors would have to do is cancel all of their contracts just before filing." (ECF No. 170 at 7). The Court is unsure how that practice might benefit debtors, particularly because the precise legal effect of rejection is a pre-petition breach. Cornerstone also does not argue that it 'canceled' or 'rescinded' the contract, merely that it canceled its remaining orders with Valve Venture. Whether that action was justified or not, the effect was a repudiation of the contract by Cornerstone. The parties' course of performance shows that there were not remaining material obligations on both sides.

Assuming Cornerstone's repudiation was wrongful, the effect would have been identical to rejection. The only difference is that Cornerstone's repudiation occurred months before the bankruptcy filing. When Cornerstone filed for bankruptcy, Valve Venture had no reasonable basis to believe that Cornerstone still sought performance of the contract or that Cornerstone would pay

the outstanding invoices. Nor did Cornerstone expect Valve Venture to inspect or ship the canceled orders.

As previously explained, Valve Venture knew six months before the bankruptcy that Cornerstone did not intend to perform its obligations under the contract and did not want Valve Venture to continue performance either. That knowledge, practically speaking, means Valve Venture knew prior to the bankruptcy that Cornerstone had "rejected" this contract. As *Mission Products* explains, § 365 gives debtors a choice between assuming valuable contracts and rejecting burdensome ones. The parties stopped performing this contract six months before Cornerstone's bankruptcy. Fault for the breakdown of the contractual relationship remained to be determined, but this contract was not executory on the petition date. *See In re C&S Grain Co.*, 47 F.3d at 237. Because the contract was not executory, Valve Venture was not justified in waiting until the executory contract bar date to file its Proof of Claim.

   b. *Excusable Neglect does not Justify Valve Venture's Late-Filed Proof of Claim*

Valve Venture asserts that its failure to file the Proof of Claim by the general bar date was the result of excusable neglect under Bankruptcy Rule 9006(b). When determining whether excusable neglect exists under Rule 9006(b), a court must consider: (i) the danger of prejudice to the debtor; (ii) the length of the delay and its potential impact on judicial proceedings, (iii) the reason for the delay (including whether it was in the reasonable control of the movant); and (iv) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assoc.*, 507 U.S. 380, 395 (1993).

Regarding the first factor, an increase in the total claims due to the late-filed claim does not necessarily prejudice the debtor. *See In re Bison Bldg. Holdings, Inc.*, 2012 WL 3230472, at *3 (Bankr. S.D. Tex. Aug. 3, 2012). Cornerstone was aware of its dispute with Valve Venture and

reasonably would have expected Valve Venture to file a Proof of Claim in the bankruptcy case. Although debtors may be prejudiced when a late-filed claim results in additional litigation, it would not be unfair to resolve this contract dispute through the claims allowance process. *But see In re Seadrill Ltd.*, 2019 WL 7580175, at *3 (Bankr. S.D. Tex. Dec. 19, 2019). However, by the time the claim was filed, the plan had been confirmed. The available funds to pay Valve Venture had been allocated to others. If Valve Venture is now entitled to payment, it would increase the overall burden on the reorganized debtor. The first factor disfavors granting relief under Rule 9006(b).

The length of delay in this case was not egregious. Valve Venture filed its Proof of Claim four months after the general bar date, but within the rejection bar date. The Valve Venture Proof of Claim was only filed about three weeks after the Court confirmed Cornerstone's plan. The second factor supports granting relief to Valve Venture.

The third factor, fault in the delay, is the most important aspect of excusable neglect analysis. *See United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004); *Graphic Commc'ns Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000). "If an explanation does not exist or is not credible, both the reason for delay and the length of the delay factors might weigh in favor of the debtor, even if the delay is quite short." *In re Seadrill*, 2019 WL 7580175, at *3.

Here, Valve Venture argues that it is an Italian business which is unfamiliar with chapter 11 proceedings. Further, Valve Venture did not retain its present counsel until after the general bar date expired. Valve Venture's justifications for the delay are unpersuasive. The evidence shows that Valve Venture had communicated with at least one attorney about the Cornerstone bankruptcy as early as May 2019. The message from that attorney suggests that he informed Valve Venture of the need to file a Proof of Claim in May 2019. Valve Venture has not suggested that

it lacked notice of the bankruptcy. Nor has Valve Venture refuted the implications of Mr. Coveny's message to Cornerstone's counsel. The third factor weighs heavily against granting relief because Valve Venture had knowledge of its need to file a Proof of Claim months before the deadline expired.

The fourth factor is either neutral or weighs against granting relief. Although there is no evidence of *bad* faith, the burden is on Valve Venture to prove its own *good* faith. Valve Venture's failure to timely file its Proof of Claim is inexplicable given the parties' course of performance. Valve Venture was aware of the bankruptcy and its need to file a Proof of Claim well in advance of the general bar date.[1] Cornerstone unambiguously cancelled the remaining orders six months before bankruptcy. Valve Venture knew the contract was valueless to Cornerstone. Valve Venture's subjective belief that the contract was executory does not (without more) demonstrate its good faith.

The critical factors in the Rule 9006(b) analysis weigh heavily against allowing Valve Venture's late-filed proof of claim. Although Valve Venture is a foreign company who did not retain its present counsel until after the general proof of claim bar date, the evidence shows that Valve Venture knew about the necessity of filing a Proof of Claim months before the bar date. Valve Venture was not justified in its belief that it only needed to file by the rejection bar date.

---

[1] Valve Venture also sought to have Cornerstone treat its claim as an administrative expense. (ECF No. 168-1 at 2). Valve Venture does not appear to seriously contend that its claim is entitled to administrative priority.

8 / 9

The failure to timely file a proof of claim was not justified by excusable neglect. Valve Venture's Motion to Compel is denied.

## CONCLUSION

A separate order will be entered.

SIGNED 04/27/2021

                                                              Marvin Isgur
                                       United States Bankruptcy Judge